**Darren A. LAUCK and Diane E. Lauck, Plaintiffs–Appellees,**

v.

**E–470 PUBLIC HIGHWAY AUTHORITY, a Colorado corporation, Defendant–Appellant.**

**No. 07CA0248.**

Colorado Court of Appeals, Div. VI.

May 15, 2008.

Roger T. Castle, P.C., Roger T. Castle, Denver, Colorado, for Plaintiffs–Appellees.

Dill Dill Carr Stonbraker & Hutchings, P.C., John J. Coates, Kevin M. Coates, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

In this interlocutory appeal brought pursuant to section 24–10–108, C.R.S.2007, of the Colorado Governmental Immunity Act (CGIA), sections 24–10–101 to –120, C.R.S. 2007, defendant, the E470 Public Highway Authority, seeks reversal of the order of the trial court denying its motion to dismiss, for lack of subject matter jurisdiction, the complaint filed by plaintiffs, Darren A. Lauck and Diane E. Lauck. We affirm.

## I. Background

On October 23, 2003, plaintiffs were injured in an automobile accident as a result of an alleged dangerous condition (ice) on the E–470 overpass at Jordan Road on the E–470 right-of-way. Defendant moved to dismiss plaintiffs' complaint pursuant to C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the CGIA.

The trial court denied defendant's motion, finding that defendant's immunity was waived under section 24–10–106(1)(d)(I), C.R.S.2007, because the accident occurred on a public highway "within the corporate limits of any municipality." The court also found that E–470, although not currently designated as a federal interstate, primary, or secondary highway as those terms are used in section 24–10–106(1)(d)(I), nevertheless fell within those federal categories of roads. The court noted that the federal highway designations were based on the 1963 Federal–Aid Highway System legislation, that these designations were changed by the federal government in 1991, and that the new designations were intended as replacements for the prior designations. The court further found that E–470 is part of the state highway system. Defendant then brought this appeal.

Defendant contends that the trial court erred in determining that E–470 falls within one of the four categories of roads set forth in section 24–10–106(1)(d)(I) for which a public entity's immunity may be waived. We conclude that E–470 constitutes the type of road included within the waiver of immunity in section 24–10–106(1)(d)(I) for federal interstate, federal primary, or federal secondary highway systems, and thus, the trial court did not err in finding that defendant's immunity was waived. Consequently, we need not address whether defendant's immunity would be waived because E–470 is part of the state highway system or constitutes a public highway within the corporate limits of a municipality.

## II. Statutory Framework

In interpreting the CGIA, our primary task is to determine and give effect to the intent of the General Assembly. *Medina v. State*, 35 P.3d 443, 453 (Colo.2001). To ac-

complish this task, we look to the statutory language, giving words and phrases their plain and ordinary meaning, and interpreting the statute in a way that best effectuates the purpose of the legislative scheme. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384–85 (Colo.1997).

Because the CGIA derogates the common law, its grant of immunity must be strictly construed, and its waiver provisions are interpreted broadly. *Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo.2000). While one purpose of the CGIA is to protect the public against unlimited liability and excessive fiscal burdens, another purpose "is to allow the common law of negligence to operate against governmental entities except to the extent [the CGIA] has barred suit against them." *Walton v. State*, 968 P.2d 636, 643 (Colo.1998).

Whether governmental immunity applies to bar a suit is a question of jurisdiction for the trial court. *Springer v. City & County of Denver*, 13 P.3d 794, 798 (Colo. 2000). When, as here, the issue is one of statutory interpretation, we review the trial court's determination de novo. *Medina*, 35 P.3d at 452–53.

Section 24–10–106(1)(d)(I) waives immunity for:

A dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion, if paved, or on the portion customarily used for travel by motor vehicles, if unpaved, of any public highway, road, street, or sidewalk within the corporate limits of any municipality, or of any highway which is a part of the federal interstate highway system or the federal primary highway system, or of any highway which is a part of the federal secondary highway system, or of any highway which is a part of the state highway system on that portion of such highway, road, street, or sidewalk which was designed and intended for public travel or parking thereon.

The supreme court has held that section 24–10–106(1)(d)(I) waives immunity for only four categories of roads:

(1) "any public highway, road, street, or sidewalk within the corporate limits of any municipality"; (2) "any highway which is a part of the federal interstate highway system or the federal primary highway system"; (3) "any highway which is a part of the federal secondary highway system"; or (4) "any highway which is a part of the state highway system on that portion of such highway, road, street, or sidewalk which was designed and intended for public travel or parking thereon."

*Bloomer v. Bd. of County Comm'rs*, 799 P.2d 942, 945 (Colo.1990), *overruled in part on other grounds by Bertrand v. Bd. of County Comm'rs*, 872 P.2d 223, 227 (Colo.1994); *see Click v. Bd. of County Comm'rs*, 923 P.2d 347, 348–349 (Colo.App.1996) (holding that a 1992 amendment to the CGIA did not alter the four categories of roads for which the supreme court in Bloomer had determined that immunity was waived); *see also Wark v. Bd. of County Comm'rs*, 47 P.3d 711, 714 (Colo.App.2002) (noting that section 24–10–106(1)(d)(I) has been construed to effect a waiver of immunity for only the four categories of roads set forth in Bloomer).

### III.  Analysis

Defendant is a "public entity" as defined in section 24–10–103(5), C.R.S.2007, of the CGIA. The E–470 Public Highway Authority is a political subdivision of the State of Colorado that was formed pursuant to the Public Highway Authority Law (PHA Law), sections 43–4–501 to –522, C.R.S.2007, to operate a public highway supported by tolls. *See* § 43–4–502(1)(d), C.R.S.2007.

The parties do not dispute that E–470 is a "public highway" as defined in section 43–4–503(12), C.R.S.2007, of the PHA Law. The legislative declaration for the PHA Law recognizes that certain public highways may be financed, constructed, operated, and maintained by public highway authorities such as E–470. *See* § 43–4–502, C.R.S.2007; *Nicholl v. E–470 Pub. Highway Auth.*, 896 P.2d 859, 863–64 (Colo.1995).

Thus, the issue is whether E–470 may be considered either a federal interstate, primary, or secondary highway for purposes of the CGIA.

The federal highway designations listed in the CGIA were replaced at the federal level with a single successor designation known as the National Highway System (NHS) through the passage of the Intermodal Surface Transportation Efficiency Act of 1991 (ISTEA). *See* 23 U.S.C. § 103(b)(2) (describing the components of the NHS); *see also* Pub.L. No. 102–240, § 1006, 105 Stat. 1914, 1923–24.

Prior to 1991, four federal-aid systems of roads existed: interstate, primary, secondary, and urban. *See* Pub.L. No. 102–240, § 1005(c)-(e), 105 Stat. at 1922–23. Following the passage of ISTEA, roads designated as part of the NHS were included in the federal-aid system of roads. *See* 23 U.S.C. §§ 101(5), (6), (16) & 103(a). The NHS roads were formally approved through the National Highway Designation Act of 1995. *See* Pub.L. No. 104–59, § 101, 109 Stat. 568, 569.

Although the federal-aid highway designations were effectively eliminated when ISTEA was passed in 1991, legislation associated with the implementation of ISTEA establishes that the NHS designation was substituted for the federal-aid system designations. In particular, this legislation, among other things, substituted the NHS for the federal-aid primary system as well as the four federal-aid systems. *See* Pub.L. No. 102–302, § 103(4), 106 Stat. 248, 253 (substituted "National Highway System" for "Federal-aid primary system"); Pub.L. No. 102–240, § 1006(a), 105 Stat. at 1923 (substituted provisions defining Federal-aid systems as Interstate System and NHS for provisions establishing and continuing four Federal-aid systems: primary, urban, secondary, and Interstate); Pub.L. No. 102–240, § 1006(e), 105 Stat. at 1926 (substituted provisions relating to apportionment of funds for NHS for provisions relating to apportionment of funds for Federal-aid primary system); Pub.L. No. 102–240, § 1006(f), 105 Stat. at 1925–27 (substituted provisions relating to transferability of funds apportioned for NHS for provisions relating to transferability of funds apportioned for Federal-aid primary system, Federal-aid secondary system, and Federal-aid urban system); *see also* 23 U.S.C. § 131(t)

(defining "primary system" with regard to the control of outdoor advertising and providing that "the terms 'primary system' and 'Federal-aid primary system' mean the Federal-aid primary system in existence on June 1, 1991, and any highway which is not on such system but which is on the National Highway System"); 23 C.F.R. § 470.103 ("Federal-aid highway systems means the National Highway System and the Dwight D. Eisenhower National System of Interstate and Defense Highways (the 'Interstate System')").

The evidence presented by the parties likewise establishes that, in general, the NHS designation replaced the federal interstate, federal primary, and federal secondary designations that are currently used in the CGIA. E–470 is currently designated as a "non-interstate toll road" pursuant to the NHS classifications and is listed as an NHS route.

Because the NHS has, for all legal and practical purposes, been equated with the federal-aid highway system to which the CGIA refers, and because E–470 is an NHS route, we conclude that E–470 is a federal-aid highway for CGIA purposes.

In so concluding, we note that defendant's interpretation would, because of a change in federal legislation and policy, result in no waiver of immunity for any road constructed in Colorado after 1991 that would have been previously designated as part of the federal interstate, federal primary, or federal secondary highway system. Such an outcome would be contrary to the history of, and the policy behind, the CGIA's waiver of immunity for public roads.

In 1968, the Committee on Sovereign Immunity prepared a Legislative Council Report to the Colorado General Assembly on Governmental Immunity in Colorado (Legislative Council Report). That report included proposed legislation that adopted the federal highway designations as a means of identifying which roads were subject to a waiver of immunity. Legislative Council Report at 139–40. These designations were included in the initial legislation subsequently passed by the General Assembly and in the amendments thereto. *See* Ch. 323, sec. 1, § 130–

11–6(1)(e), 1971 Colo. Sess. Laws 1206; *see also* § 24–10–106(1)(d)(I).

In our view, the apparent intent of section 24–10–106(1)(d)(I) was to provide a fairly comprehensive waiver of immunity for dangerous conditions on public roads. A paved, four-lane, limited access, divided highway owned, operated, and maintained by a governmental entity created by multiple jurisdictions does not appear to be the type of roadway the General Assembly intended to exclude from the waiver of immunity for public roads. As the Legislative Council Report indicates, the Committee on Sovereign Immunity was concerned about the effect of waiving immunity for unpaved roads, not paved, multi-lane, divided highways. Legislative Council Report at xxi, 138–40. The federal highway system classifications were perceived by the Committee on Sovereign Immunity as the best method at that time for identifying which roads were subject to a waiver of immunity. Legislative Council Report at 139–40.

■ Therefore, although E–470 is not currently classified as part of the federal interstate, federal primary, or federal secondary highway system, we nevertheless conclude that its inclusion in the NHS, which effectively replaced the federal-aid highway system classifications, in particular the federal-aid primary highway system, is sufficient to establish a waiver of immunity under the CGIA.

As such, we conclude that the trial court did not err in determining that defendant's immunity was waived under section 24–10–106(1)(d)(I) for an alleged dangerous condition on E–470.

The order is affirmed.

Judge VOGT and Judge FURMAN concur.